CALDWELL LESLIE & PROCTOR, PC
LINDA M. BURROW, State Bar No. 194668
burrow@caldwell-leslie.com
MICHAEL D. ROTH, State Bar No. 217464
roth@caldwell-leslie.com
1000 Wilshire Blvd., Suite 600
Los Angeles, California 90017-2463
Telephone: (213) 629-9040
Facsimile: (213) 629-9022

Attorneys for Plaintiffs
UNIVERSAL STUDIOS INTERNATIONAL B.V.
AND UNIVERSAL CITY STUDIOS
PRODUCTIONS LLLP



FILED
2009 MAR 19 PM 1:50
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNIVERSAL STUDIOS INTERNATIONAL B.V., a Netherlands corporation, and UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP, A Delaware Limited Liability Limited Partnership,<br><br>Plaintiffs,<br><br>v.<br><br>ENTERTAINMENT TELEVISION NETWORK FZE, a United Arab Emirates corporation,<br><br>Defendant. | Case No. 09-CV-01348 GAF (FFM)<br><br>**FIRST AMENDED COMPLAINT FOR BREACH OF CONTRACT**<br><br>**DEMAND FOR JURY TRIAL** |

CALDWELL
LESLIE &
PROCTOR

082-01\Complaint (3) 8-6-08.doc
\24

FIRST AMENDED COMPLAINT

Plaintiffs, UNIVERSAL STUDIOS INTERNATIONAL, B.V. ("USI"), and UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP ("UCSP"), for their Complaint against Defendant ENTERTAINMENT TELEVISION NETOWRK FZE ("ENTV"), allege as follows:

### NATURE OF THE ACTION

1.    This is a civil action for breach of contract arising out of ENTV's breach of its agreement to license films and television series owned or exclusively licensed by UCSP and distributed by USI for exhibition on basic cable in India by, among other things, failing to provide USI with payment security in the form of a Letter of Credit and failing to pay license fees due and payable to USI.

2.    India is the second-largest television market in number of households – and one of the fastest-growing cable markets – in Asia.  Having the ability to exhibit its entertainment products on basic cable in India is thus highly valuable to Plaintiffs, both in terms of the license fees that would flow to Plaintiffs from such exhibition, and the benefit that comes from developing a new and growing audience for Plaintiffs' products.

3.    ENTV aggressively pursued the Indian basic cable rights to Plaintiffs' products.  In October 2008, following lengthy negotiations, ENTV and USI executed a six-year written agreement for the exhibition of Plaintiffs' products, pursuant to which ENTV agreed to license a minimum of $6 million in product in the first year alone.  ENTV has not provided USI with a Letter of Credit to secure its payment obligations, despite its express obligation to do so.  Nor has ENTV paid USI the first installment on the $6 million guaranteed license fee, which was due on January 1, 2009.  Indeed, ENTV has failed even to select which of Plaintiffs' products it intends to exhibit.

4.    So long as ENTV refuses to perform under the agreement, the products licensed to ENTV will continue to go unexhibited in the particular Indian basic cable television window for which ENTV was licensing the products.  Moreover, because

CALDWELL
LESLIE &
PROCTOR

-1-

FIRST AMENDED COMPLAINT

exhibitors like ENTV often license entertainment product years in advance of their scheduled exhibition dates, Plaintiffs have no alternative Indian basic cable television outlet for the products and window that are subject to the agreement. Plaintiffs thus bring this action to recover their damages from ENTV's breaches, including the loss in value of their products caused by ENTV's refusal to perform.

## PARTIES

5.     Plaintiff USI is a Netherlands company with its principal place of business in Amsterdam, the Netherlands.  USI is in the business of distributing filmed entertainment products for exhibition on television outside of the United States, including throughout Asia.

6.     Plaintiff UCSP is a Delaware limited liability limited partnership domiciled in Delaware and Universal City, California, the sole partner of which also is domiciled in Delaware and Universal City, California.   UCSP owns the copyright and/or other exclusive rights in certain  filmed entertainment products.  UCSP grants certain rights to distribute its filmed entertainment products to other companies, including USI, in markets outside the United States.  Because it owns or holds exclusive rights in the filmed entertainment products which are the subject of the license agreement between USI and ENTV, UCSP is an intended third-party beneficiary of that agreement.

7.     Plaintiffs are informed and believe, and on that basis allege, that Defendant ENTV is a corporation organized under the laws of the United Arab Emirates with its principal place of business in Mumbai, India.  Plaintiffs are further informed and believe that ENTV is an entertainment company that is launching basic cable television networks that will, among other things, exhibit English-language films and television programming supplied by Plaintiffs throughout India.

CALDWELL
LESLIE &
PROCTOR

-2-

FIRST AMENDED COMPLAINT

## JURISDICTION AND VENUE

8.   USI filed this action in the Los Angeles County Superior Court, where venue was proper because its claim is based on a written agreement with ENTV in which the parties expressly agreed that the agreement shall be governed by and construed in all respects in accordance with the laws of the State of California, and that all disputes arising out of or relating to agreement must be heard and determined in a federal or state court sitting in Los Angeles County, California. To that end, ENTV agreed to submit to the jurisdiction of the federal and state courts sitting in Los Angeles County, and also agreed to waive any objection to those courts based on improper venue or inconvenient forum. ENTV subsequently removed this action from the Los Angeles County Superior Court to this Court.

9.   Jurisdiction is proper in this Court under 28 U.S.C. § 1332(a)(2) because the amount in controversy is more than $75,000 and because UCSP is a resident of Delaware and California and USI and ENTV are citizens of foreign nations.

10.   Venue is proper in this Court under 28 U.S.C. § 1391(a)(1) because Defendant ENTV is deemed to reside in the Central District of California pursuant to 28 U.S.C. § 1391(c).

## FACTUAL BACKGROUND

### USI and ENTV Enter Into The License Agreement

11.   On October 8, 2008, USI and ENTV entered into a six-year written license agreement entitled Basic Television Output License Agreement (the "Agreement"). The purpose of the Agreement was for Plaintiffs to secure an outlet to exploit certain of their entertainment products on basic cable television in India and for ENTV to obtain a dependable source of English-language films and television programs for a family of basic cable channels ENTV is preparing to launch in 2009.

CALDWELL
LESLIE &
PROCTOR

-3-

FIRST AMENDED COMPLAINT

12. Under the Agreement, USI agreed to license a certain quantity of feature films, made-for-television films and television series (collectively, the "Licensed Product") to ENTV for basic cable exhibition in India. In exchange, ENTV agreed to pay License Fees for each Licensed Product, (Agmt., § 11), and to guarantee a minimum aggregate license fee (the "Minimum Guarantee") for Licensed Product for each twelve-month period commencing on January 1 (the "Contract Year"). (Agmt., § 12). The Minimum Guarantee for the first Contract Year, beginning January 1, 2009, is $6.0 million. (Agmt., § 12).

13. UCSP owns the copyright and/or other exclusive rights in Licensed Product, and granted to USI the right to distribute the Licensed Product in certain foreign territories, including India.

**ENTV Agrees To Select Product From A List Supplied By USI**

14. The Agreement provides that prior to each Contract Year, USI "will use reasonable efforts to provide [ENTV] with a list of all titles (post-1950) that will be available…for the upcoming Contract Year." (Agmt., § 9). From that list (the "Availability List"), ENTV is required to license all "First-Run Films" to which USI has the relevant rights in India, and certain minimum quantities of "Library Films," "TV Movies" and "TV Series." (Agmt., §§ 8, 9). All Licensed Product is to be dubbed or subtitled in Hindi, Tamil, Telugu, Bengali, Punjabi, Marathi, Gujarti, Kannada or Malayalam at ENTV's expense. (Agmt., §§ 6-7).

15. ENTV is obligated to select product to be licensed within fifty days of receiving an Availability List from USI. (Agmt., § 9(b)). If the aggregate license fee for the product selected by ENTV for any given Contract Year does not reach the Minimum Guarantee, then ENTV is obligated to select additional Licensed Product to reach the Minimum Guarantee. (Agmt., § 12(b)). The Agreement provides that, if ENTV does not make its selections within the time provided, then USI has the right to make selections on ENTV's behalf to fulfill the Minimum Guarantee for that Contract Year. (Agmt., § 9(b)).

CALDWELL
LESLIE &
PROCTOR

-4-

16.     The Agreement was made for UCSP's benefit in that UCSP owns the copyright and/or other exclusive rights in the Licensed Product, UCSP shares in the revenue derived from the Agreement, and the distribution of UCSP's Licensed Product in India will enhance its value.  Plaintiffs are informed and believe, and on that basis allege, that, at the time of the Agreement, ENTV was aware that UCSP owns or holds rights in the Licensed Product.

### ENTV Agrees To Maintain Letters Of Credit And
### To Pay License Fees On A Quarterly Basis

17.     ENTV agreed to pay license fees due for each Contract Year on a quarterly basis, on the first day of each quarter, beginning on January 1, 2009. (Agmt., § 13(a)).  Based upon a Minimum Guarantee of $6.0 million, ENTV thus agreed to pay USI no less than $1.5 million on January 1, 2009 and on the first day of each of the three quarters thereafter.  Payments not made within 30 days of the due date bear interest at the rate of 10% per year accruing from the payment due date until payment is ultimately made.  (Agmt., § 13(c)).

18.     ENTV also agreed to maintain "unconditional and irrevocable commercial letters of credit" for the entire amount of the Minimum Guarantee for each Contract Year:

> All of [ENTV's] payment obligations under this Agreement must be secured and guaranteed by unconditional and irrevocable commercial letters of credit by a bank and in a form satisfactory to [USI] in its sole discretion (each, an "LC" and collectively the "LCs") in an amount equal to not less than the Minimum Guarantee for each Contract Year. [ENTV] must deliver, and [USI] must receive, an LC in accordance with this Agreement at least 3 months prior to the beginning of each Contract Year (or, with respect to Contract Year 1, within 30 days of execution of this Agreement) and in any event prior to

CALDWELL
LESLIE &
PROCTOR

-5-

FIRST AMENDED COMPLAINT

delivery of any materials for any Licensed Product licensed for such Contract Year. [ENTV] must maintain each LC in full force and effect at [ENTV's] expense. In addition, [ENTV] must reimburse [USI] for any bank commissions, confirmation costs, or other bank costs incurred by [USI] in relation to confirming the LC.

(Agmt., §15).

19.    ENTV's obligation to provide a Letter of Credit is both a covenant and a condition precedent to USI's performance. Specifically, the Agreement provides that "any failure" by ENTV "to deliver and maintain an LC in full force and effect constitutes a material breach of this Agreement entitling [USI] to suspend any or all of [ENTV's] rights, suspend any or all of [USI's] obligations or terminate [the] Agreement...," (Agmt., § 15), and that "the full execution, delivery, and maintenance of the LCs and the reimbursement of any bank commissions, confirmation costs or other bank costs charged by [USI's] advising or confirming bank, are conditions precedent to any of [USI's] obligations under this Agreement." (Agmt., § 15).

### ENTV Breaches the Agreement

20.    ENTV has failed to deliver the $6 million Letter of Credit required under the Agreement, which ENTV was obligated to provide no later than November 7, 2008, 30 days after the Agreement was executed.

21.    Moreover, ENTV has failed to pay the first $1.5 million installment on the $6.0 million Minimum Guarantee for the first Contract Year, which was due on or before January 1, 2009.

22.    On or around October 20, 2008, less than two weeks after the Agreement was executed, USI provided ENTV with Availability Lists listing titles available for license during the first three Contract Years, and the dates on which those titles would become available. Those lists included more than 1,000 Library

CALDWELL
LESLIE &
PROCTOR

-6-

FIRST AMENDED COMPLAINT

Films, more than 675 seasons of TV Series and 280 TV Movies, along with the titles of all First Run Films for which USI had the right to exhibit on basic cable television in India. Although ENTV was required to make its selections for Contract Year 1 no more than fifty days later, by December 9, 2008, ENTV has to date refused to select any product from the Availability List.

**USI Gives ENTV Written Notice Of Its Breach; ENTV Fails To Cure**

23. The Agreement provides that ENTV has fifteen days to cure any breach of any of the payment or security terms after receiving written notice of such breach from USI. (Agmt., § 25(a)(i)). ENTV's failure to cure such a breach is an "Event of Default," which gives USI the right, in its sole discretion, to enforce or terminate the Agreement. (Agmt., § 25(b)).

24. ENTV acknowledged in the Agreement that its Default would have the effect of rendering Licensed Product unmarketable during the period encompassed by the Agreement. Because entertainment products lose value over time, ENTV agreed that in an "Event of Default," USI would be able to recover "as liquidated damages the full, unpaid net License Fee for all exhibitions authorized under [the] Agreement, whether or not such exhibitions actually occur" as compensation for the loss in value as a result of ENTV's breach. (Agmt., § 25(b)(v)). ENTV also agreed that USI would be entitled to recover any reasonable attorney's fees, costs and expenses USI incurred in enforcing the terms of the Agreement. (Agmt., § 25(b)(vi)).

25. USI gave written notice of ENTV's material breaches of the Agreement on or about December 15, 2009. ENTV acknowledged receipt of USI's notice on December 24, 2008, but did not cure the breaches.

26. USI gave additional written notice of ENTV's material breaches of the Agreement on or about January 7, 2009. ENTV again failed to cure its breaches.

CALDWELL
LESLIE &
PROCTOR

-7-

## FIRST CAUSE OF ACTION

### (Breach of Contract Against All Defendants)

27. Plaintiffs incorporate herein by reference the allegations in Paragraphs 1 through 27 hereof, inclusive.

28. USI and ENTV are parties to the Agreement, pursuant to which ENTV agreed, among other things, to license the Licensed Product for exhibition on basic cable television in India, to provide a Letter of Credit as payment security for the rights it licensed from USI, and to pay license fees of at least the Minimum Guarantee amount in equal quarterly amounts. UCSP is a third-party beneficiary of the Agreement.

29. In addition to its express terms, the Agreement contains an implied covenant of good faith and fair dealing on the part of ENTV, pursuant to which ENTV is obligated to treat Plaintiffs fairly and in good faith, to do nothing to deprive Plaintiffs of the benefits of the Agreement, and to do everything that the Agreement presupposed ENTV will do to accomplish its purpose.

30. USI has performed in accordance with the terms and conditions of the Agreement, except for those conditions, covenants, obligations or promises that were waived, excused, or prevented by Defendants. USI has satisfied each and every condition precedent under the Agreement for commencing suit against ENTV.

31. ENTV has materially breached the Agreement by:

    (a)    failing and refusing to provide Letters of Credit in the amount of the $6 million Minimum Guarantee for Contract Year 1;

    (b)    failing and refusing timely to pay $1.5 million in license fees for the first Contract Year;

    (c)    failing and refusing to select product from the Availability List; and

    (d)    otherwise failing to treat Plaintiffs fairly and in good faith, to do nothing to deprive Plaintiffs of the benefits of the Agreement,

CALDWELL
LESLIE &
PROCTOR

-8-

and to do everything that the Agreement presupposed ENTV will do to accomplish its purposes.

32.    Because of ENTV's breaches, Plaintiffs have no alternative means to license their product for exhibition in the second basic cable television window in India. The value of that product has therefore declined. As a result, there is no method for Plaintiffs to accurately calculate the damages from ENTV's breaches. Plaintiffs are therefore entitled to liquidated damages in addition to its other rights and remedies.

33.    Plaintiffs have suffered actual and consequential damages as a direct and proximate result of ENTV's breaches of the Agreement in an amount no less than $45,000,000 plus prejudgment interest at a rate of 10% per annum as set by Section 13 of the Agreement, as well as the fees and costs incurred in enforcing the terms of the Agreement.

CALDWELL
LESLIE &
PROCTOR

-9-

FIRST AMENDED COMPLAINT

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs hereby pray that judgment be awarded in their favor and against Defendant as follows:

1.    For damages in an amount to be proven at trial, but in any event not less than $45,000,000, plus prejudgment interest thereon;

2.    For all legal fees and costs of suit to which they are entitled by law; and

3.    For such other and further relief as the Court deems appropriate and just.

DATED: March 19, 2009

Respectfully submitted,

CALDWELL LESLIE & PROCTOR, PC

By _____
LINDA M. BURROW
Attorneys for Plaintiffs
UNIVERSAL STUDIOS
INTERNATIONAL, B.V. and
UNIVERSAL CITY STUDIOS
PRODUCTIONS LLLP

CALDWELL
LESLIE &
PROCTOR

-10-

FIRST AMENDED COMPLAINT

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen and not a party to the within entitled action. My business address is 1055 W. 7th Street, Suite 250, Los Angeles, California 90017.

On **March 19, 2009**, I served the within document(s) described below as

**FIRST AMENDED COMPLAINT FOR BREACH OF CONTRACT**

on the parties to this action who are listed on the attached Service List.

    **( ) BY HAND (STATE COURT):** By hand-delivering a true copy thereof in sealed envelopes to the offices of the parties listed on the attached Service List.

    **(X) BY HAND (FEDERAL COURT):** By placing a true copy thereof in sealed envelopes and causing such envelopes to be hand-delivered to the offices of the parties listed on the attached Service List.

**STEPTOE & JOHNSON, LLP**
**Mark A. Neubauer**
**Meredith M. Moss**
**2121 Avenue of the Stars, Suite 2800**
**Los Angeles, CA 90067**

**( ) STATE:** I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct of my own personal knowledge, and that I executed this document on **March 19, 2009**, at Los Angeles, California.

**(X) FEDERAL:** I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct of my own personal knowledge, that I am employed in an office of a member of the Bar of this Court at whose direction this service was made, and that I executed this document on **March 19, 2009** at Los Angeles, California.

                            **APEX MESSENGER**

CALDWELL, LESLIE, PROCTOR & PETTIT

-1-

082-01\Apex.doc \3